Yak Yoorhis, J.
This article 78 proceeding is brought by a landlord to review a determination of the City Bent and Behabilitation Administrator. The landlord has applied to remodel and renovate three old-law tenements (constructed in 1884) located at 239, 243 and 247 West 21st Street, Manhattan, on the basis that they are underoccupied. These premises contain 30 flats, which are proposed to be converted into 60 modern apartments. Amicable arrangements for remodeling were made with occupants of 16 of these old-law flats. A.t issue in this litigation are five more.
The Administrator is given considerable discretion by the enabling acts (L. 1962, ch. 21, § 1, subd. 6; Local Laws, 1962, No. 20 of City of New York as amd., adding Administrative Code, ch. 51, tit. Y, § 51-5.0, subd. g, par. [1]). She is authorized under section 57 of the Bent, Eviction and Behabilitation Begulations to determine whether the eviction of the tenants in particular cases is consistent with the purpose of the Bent Law and these regulations, and to require suitable provision to be made for relocation. Moreover, the remodeling plans are required, subject to review, to be approved by the ‘1 City agency having jurisdiction thereof ”, in this case the District Bent and Behabilitation Director of the Lower Manhattan District Bent Office, who approved the remodeling plans.
The appeal presents solely a question of law. At issue is the question whether the District Director and the Administrator had jurisdiction to approve any remodeling plans of these properties. Under paragraph (1) of subdivision a of section 57 of the Bent, Eviction and Behabilitation Begulations no remodeling plans are to be approved for the purpose of subdividing an under occupied housing accommodation containing less than six rooms, exclusive of bathrooms and kitchen. The issue here is whether each of these five flats contained as many as six rooms in view of the circumstance that one of the rooms in each flat measures approximately 7 by 6% feet in dimensions. The Administrator has ruled that it is too small to be a room and that, therefore, the flat cannot be remodeled. If it were big enough to be a room, then the District Director and the Administrator could have considered the adequacy and merits of the remodeling and rehabilitation plan, as did the District Director who approved the project. Whether a public officer has power to *561 exercise discretion over a matter, it is well settled, presents a question of law. The Administrator did not reach the point of exercising her discretion concerning whether this project Avas good, bad or indifferent or whether the relocation plans for the tenants were adequate, because she found that this Avas not a room. Special Term overruled her determination that it was not a room; the Appellate Division, in reversing, ruled that the Administrator had discretion to decide whether it is a room or not. Thus, in effect, the Appellate DiAdsion held that she had discretion to determine whether she had power to exercise discretion regarding the merits of this remodeling project. Special Term held, as matter of law, that she had no discretion to determine whether this was or was not a room, and remanded the matter to her for consideration of its merits. The Appellate Division considered that the Administrator could decide for herself when a room is not a room, and that the courts could do nothing about it even though she might make different and contradictory decisions concerning what dimensions or square footage of floor space would constitute a room in different parts of the city.
The Department of Buildings was consulted and stated unequivocally that this Avas a legal room in conformity with the applicable building code and regulations. Being an old-law tenement, no applicable provision of the Multiple DAvelling Law prescribed any minimum legal size of rooms (Multiple Dwelling Law, § 366, subd. 4).
The Appellate Division held that the circumstance that this room could legally he maintained did not necessarily signify that it was a room Avithin the meaning of section 57 of the Rent, Eviction and Rehabilitation Regulations. Citing Matter of Lion Brewery v. Weaver (8 A D 2d 173, 175, affd. 7 N Y 2d 928) — involving different facts — the Appellate Division determined that the Administrator has a wide range of discretion to determine Avhether she is empowered to exercise discretion regarding remodeling projects, and said that “ The Administrator Avas not bound as a matter of law to conclude the area was a room.5 ’ The Appellate Division continued by saying that “ Numerous administrative determinations that enclosed areas do not constitute a room within the meaning of the Rent Laws have been upheld by the courts ” citing Matter of Mayfair-York Corp. v. Weaver *562 (13 Misc 2d 829, affd. 9 A D 2d 613; Matter of Sacks v. McGoldrick, N. Y. L. J. Nov. 14, 1951, p. 1230, col. 3, affd. 279 App. Div. 787, and Matter of Paretta v. McGoldrick, N. Y. L. J., July 26, 1954, p. 2, col. 6, affd. 284 App. Div. 1034).
An examination of those decisions shows, however, that the Mayfair-York and Sacks cases involved multiple dwellings erected in 19*09 and 1913, which meant that they were not old-law tenements and that the area of the alleged rooms was, therefore, illegal. A room which is of illegal size could hardly he classified as being a room within the meaning of any law (see Multiple Dwelling Law, § 4, subd. 11 for definition of 1 ‘ old-law tenement ’ ’ as one existing before April 12, 1901). The other case cited by the Appellate Division (Paretta) related to a different subject altogether, namely, whether a dressing room and adjoining master bedroom constituted one room or two. This had nothing to do with the present issue. None of the cases cited by the Appellate Division supports its determination. The cases cited by Special Term are more nearly in point (Matter of Kellogg [Weaver], N. Y. L. J., Dec. 6,1956, p. 6, col. 1; Matter of Rosin v. McGoldrick, 279 App. Div. 1080; Soubasis v. Finkelstein, 82 N. Y. S. 2d 465, and Geddes v. McGoldrick, N. Y. L. J., Feb. 2, 1953, p. 356, col. 2). In the first two, rulings by the Administrator were upheld that a space in an apartment 6 feet 6 inches by 11 feet and another 7 by 9 feet constituted a room In the third case cited an administrative ruling was reversed that a 4%-foot by 10%-foot space in a building was not a living room. In the last case cited a dressing room was held to be includable in the same nomenclature.
Although it may be true, as said by the Appellate Division, that words used in one statute are not necessarily given the same meaning or bound by the same limitations as words used in another statute, we conclude, as did Justice Schweitzer at Special Term, that what is meant by a room in regulation 57 is a “ legal room.”
This construction accords with the public policy intended to be promoted by the regulation in question, and results in a simple and workable rule. This is evidently an old, poorly designed tenement house which contains considerable waste space. The owner proposes to remodel these ancient six-room flats, each occupied by two people, into more modern three-room accommo *563 dations. The rents will he substantially less than those now being charged, and at least 16 of the tenants have apparently considered it to be to their advantage. Possibly the owner should not have aimed at doubling the number of apartments, but with that, at present, we are not concerned. The District Director and the Administrator have power, if the facts warrant, to require the owner to change its plans so as not to create any excessive number of new living units. There is something mistaken in ruling, however, that it is in the public interest to require these dilapidated, out of date structures to remain as they are on some theory that because a room may be thought to be too small to be called a room it should, therefore, not be enlarged. Unless the word “ room ” in regulation 57 be construed to mean ‘1 legal room ’ ’, it will put obstacles in the way of rehabilitating these old tenements where, as here, they are evidently under-occupied.
The order appealed from should be reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division.