THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT G. PERKINS *et al.*, Defendants-Appellants.

Fifth District    No. 76-2

Opinion filed April 18, 1977.

James Geis and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, and Janice L. Harwell, law student, for appellants.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish, of Illinois State's Attorneys Association, and Phillip Kavanaugh, law student, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Robert Perkins and Michael Smith, defendants, were convicted by a jury for the armed robbery of Danny Roberts in Alton, Illinois. Both defendants were sentenced to the Illinois Department of Corrections for terms of not less than four nor more than five years.

In their appeal, defendants contend the trial court erred in refusing their motions to suppress certain identification testimony and in refusing to give their instruction on identification. Defendants also question the sufficiency of the evidence to prove them guilty beyond a reasonable doubt.

At the trial, Danny Roberts, the victim, testified as to the robbery. He stated that on July 8, 1975, about the time he was closing the service station for the evening (6 p.m.) he was approached by two young black men who asked if he could fix a tire. He claimed that he watched them as they first approached because he was "suspicious" of their activities. Shortly after he told them he couldn't fix a tire, they followed him into the station and started to push him. While he was defending himself, he was watching the face of the taller of the two until the second man began choking him. The taller man then put a gun to his head and took $120 from his pocket. After the two pushed him into a bathroom and fled on foot, Roberts stepped out and observed them running from the station.

Linda Reed testified that at about 6 p.m. on the day in question, she was in front of her house which is about one block away from the service station. She stated that she saw two black men run from the direction of the service station and get into a green Pontiac and drive away. She said that while she did not see their faces, she remembered that one of them was wearing a red shirt. Roberts had testified that the taller of the two was wearing a red shirt.

Detective Carl Logan of the Alton Police Department was the final witness for the prosecution. He testified about his response to the telephone call from Roberts reporting the robbery, and his receiving a description of the robbers and of the car used to leave the scene. Shortly thereafter, Detective Logan stopped two black men in a green Pontiac. These men were taken to the service station for Roberts to view, but he stated that they were not the same men.

Detective Logan stated that several days after the robbery he arrested the defendants while they were driving in a green Pontiac belonging to defendant Perkins. Pictures were taken of the defendants and Danny Roberts was called in to "see if he could pick out who robbed him." He was shown seven photographs of young black males and he picked the pictures of the defendants.

While Roberts testified at trial that the pictures of the defendants had irregular edges on them and the other pictures did not have irregular edges, he stated that there did not appear to be anything "unusual" about

the photographs of the defendants when he viewed the pictures at the police station.

Defendants did not testify at trial. They called Linda Reed back to the stand and asked her to view pictures of the car defendants were arrested in. She testified that the car she saw the robbers in had a green top while the pictures depicted a car with a white top.

At a pretrial hearing on defendants' motions to suppress identification testimony, Detective Logan was the sole witness. He stated that a lineup was not conducted in this case because there were not enough black persons in the Alton jail for a lineup. He testified that the pictures of the defendants were not yet totally dry by the time Roberts viewed them, but they were dry enough to handle. Logan stated that Roberts knew that he had taken some photographs of two individuals he had arrested. The motions to suppress Danny Roberts' identification were denied.

At the instruction conference the defense tendered a non-IPI identification instruction that was about 2½ pages long. The trial court refused it on the grounds that it was repetitious within itself and repetitious of the other instructions.

The jury returned verdicts of guilty and judgments were entered accordingly.

Defendants' first contention is that their motions to suppress Danny Roberts' identification should have been granted. This contention is based on the theory that the pretrial photographic identification was unduly suggestive and it irreparably tainted Roberts' subsequent identifications of the defendants in court.

■■ In support of this contention, defendants in their brief cite *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *People v. Lee*, 54 Ill. 2d 111, 295 N.E.2d 449; *People v. Holiday*, 47 Ill. 2d 300, 265 N.E.2d 634; and *People v. Blumenshine*, 42 Ill. 2d 508, 250 N.E.2d 152. These cases accurately give the state of the law on identification procedures: if a pretrial identification procedure is so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification, then testimony regarding the pretrial identification is inadmissible, and subsequent identifications are admissible only if the State establishes by clear and convincing evidence that the subsequent identifications are based on a source independent of the tainted procedure. While we concur with the principle elucidated in these cases, either the factual situations are distinguishable from the present case, or the cases give support to the State's position.

In *Simmons* the United States Supreme Court was faced with a contention that an in-trial identification was based on impermissibly suggestive photographic identifications. In that case several bank employees viewed six pictures, consisting mostly of group photographs

of the two defendants and others. All of the employees picked out Simmons' picture. At trial the government did not introduce the photos but relied upon in-court identifications by the eyewitnesses. While they reversed on other grounds, the Supreme Court held that the method used to identify Simmons did not violate his rights to due process of law.

In *Lee* our supreme court reversed a murder conviction because of an improperly suggestive photographic identification of defendant. Defendant's picture was chosen from a group of nine which included three pictures of defendant (a man), one picture of a woman, and a picture of a man who was previously identified as being involved in the offense. The court held that where defendant's picture was three of the nine shown to witnesses, "that in [our] opinion is as highly suggestive as any type of confrontation could be."

In *Holiday* the court remanded the cause to conduct a hearing on the admissibility of identification testimony of two eyewitnesses. One of those witnesses identified defendant after he was shown only one picture of each co-defendant. The other eyewitness was shown several pictures that included a three-sided view in color of defendant, a black and white picture of defendant and a couple of other pictures of different individuals.

In both *Lee* and *Holiday* the court condemned the use of multiple photographs of a defendant when used with single pictures of other individuals. In this case only one picture was used of each defendant.

In *Blumenshine* the defendant was presented to witnesses in a one man "show-up." That situation is clearly distinguishable from the method used in this case, *i.e.*, a photographic lineup.

In *People v. Jackson*, 54 Ill. 2d 143, 295 N.E.2d 462, the supreme court was faced with a situation where the defendant contended the photographic identification methods used against him were unduly suggestive. In that case the employee of a service station observed three men entering his station, walking towards him. The first man struck him in the face with a nightstick and held him to the floor with his face turned away from the robbers. Based on his brief observation of the first attacker, the employee picked that defendant's picture from a group of four. He was not absolutely certain about the identification, so shortly thereafter he was shown a color photo of that defendant. He then positively identified the defendant who was subsequently convicted of armed robbery. The court said:

> "While we agree that this procedure is ordinarily undesirable, we cannot conclude that it gave rise to a 'very substantial likelihood of irreparable misidentification,' considering the complainant's opportunity to observe defendant when he first entered the station. [Citation.]

* * * The belief by a witness that police attention has narrowed to an individual can be a strongly suggestive influence in making an identification. [Citation.] Just as the photograph is indispensable in the investigatory phase of a criminal case, its inherent limitations are severe as the prosecutorial stage is reached, and we have said that photographic identification procedures ought not to be employed when the subject is in custody and a lineup is otherwise feasible. [Citation.] We note that the State offers no extenuating circumstances justifying the use of this photographic identification.

However, in order to determine whether the complaining witness's in-court identification of the defendant was properly received, we must examine the totality of the circumstances. [Citation.]." 54 Ill. 2d 143, 147-48.

The court stated that the employee's opportunity to observe the defendant was adequate to provide a basis for the in-court identification independent of the photographic procedures. The court then affirmed the conviction. *People v. Jackson*, 54 Ill. 2d 143, 295 N.E.2d 462.

In this case Roberts positively identified the defendants' pictures from a series of seven photographs. Roberts testified that there did not appear to be anything "unusual" about the photographs that he was shown.

■■ Based on the length of Roberts' observation of the defendants and the positiveness of his identification, we hold that the method used to identify the defendants was not so unduly suggestive as to render testimony regarding the pretrial identification inadmissible.

Even if we were to hold the method used to be unduly suggestive, we would not be required to hold that it irreparably tainted Roberts' subsequent in-court identifications. *Jackson* stands for the proposition that a witness's opportunity to observe a defendant can provide a basis for the in-court identification independent of photographic procedures.

■■ It is our opinion that the record is more than adequate to establish a prior uninfluenced observation of the defendants sufficient to serve as an independent origin for the in-court identifications.

■■ The defendants next contend that the trial court abused its discretion in denying the defendants' instruction on identification. Supreme Court Rule 451(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(a)) requires that Illinois Pattern Instructions be used in criminal cases unless the court determines that the instruction does not accurately state the law. Illinois Pattern Jury Instruction, Criminal, No. 3.15, recommends that no instruction be given on the circumstances of identification because "[i]t is adequately covered by the general instruction on credibility of witnesses, No. 1.02." In this case the instructions given included IPI Criminal No. 1.02 and No. 2.03 (Presumption of Innocence—Reasonable Doubt—Burden of Proof Generally). Defendants' tendered instruction would have

been duplicative of the two pattern instructions given. It is our opinion that the pattern instructions 1.02 and 2.03 adequately covered the subject matter of defendants' instruction in a clearer, more concise and accurate manner than defendants' instruction. (See *People v. Neely*, 18 Ill. App. 3d 287, 309 N.E.2d 725.) Therefore, the trial court properly refused the tendered instruction.

■■ Defendants' last contention of error is that the evidence did not prove them guilty beyond a reasonable doubt. In their brief defendants suggest that the State produced no evidence at trial to connect the defendants to the robbery, other than the identification by Roberts. Even if this were the case, it would not require us to reverse the convictions. The law is well settled that positive identification by a single witness who has ample opportunity for observation is sufficient to support a conviction. (*People v. Clarke*, 50 Ill. 2d 104, 227 N.E.2d 866.) We have already stated that Roberts had ample opportunity to observe the defendants. We note, also, that the in-court identification was only 90 days after the robbery. The lapse of time between the offense and the in-court identification goes only to the weight of the testimony, a question for the jury, and does not destroy the witness's credibility. (*People v. Rodgers*, 53 Ill. 2d 207, 290 N.E.2d 251.) In the *Rodgers* case the court upheld an identification made two years after the offense. In this case the time span was 90 days.

Linda Reed testifying for the State offered corroborative testimony as to the robbers' general descriptions, their direction of flight and the approximate time of the robbery.

■■ After a careful review of the record in this case, we cannot say that the evidence adduced at trial leaves a reasonable doubt as to the guilt of the defendants.

Based on the foregoing reasons, the judgments of the Circuit Court of Madison County are affirmed.

Affirmed.

KARNS and JONES, JJ., concur.