THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FLOYD COHOON, Defendant-Appellant.

Fifth District   No. 81—420

Opinion filed November 28, 1983.

HARRISON, P.J., dissenting.

Appeal from the Circuit Court of Williamson County; the Hon. William A. Lewis, Judge, presiding.

Randy E. Blue and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Randy Patchett, State's Attorney, of Marion (Stephen E. Norris and Frank J. Bieszczat, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:
Defendant Floyd Cohoon was convicted in the circuit court of Williamson County of rape and sentenced to 60 years' imprisonment to be served consecutively with the term imposed for parole violation on an earlier rape conviction. On appeal the defendant raises five issues.

He asserts that: (1) the trial court improperly allowed identification evidence obtained with the assistance of hypnosis; (2) the trial court erred in not allowing the police officer who hypnotized the victim to testify; (3) the victim's in-court identification resulted from an improperly suggestive photo array; (4) the trial court erred when it ruled he could be impeached with his former rape conviction, and (5) the sentence imposed was excessive.

On January 2, 1981, the 27-year-old victim was carrying groceries into her home in a rural area of Williamson County when a man stepped out from behind the door and closed it. A struggle ensued, she dropped the groceries, he pushed her against the wall and told her he would not hurt her if she did as he said. She testified at trial that she thought he held a knife against her neck as he spoke to her. He then tied her hands with wire and led her out the front door to turn off the headlights of her truck. After returning to the house he led her into the bedroom, pulled her pants down and put his penis into her vagina. After he completed sexual intercourse, he tied her legs together, threw a sleeping bag over her and left. She waited about five minutes, freed herself, went to the phone and asked the operator to call her husband at work and ask him to come home immediately. The victim's husband arrived home, phoned the police and then took his wife to the hospital.

On February 24, 1981, the victim picked the defendant's photograph out of six she was shown in a photo array. She later made an in-court identification of the defendant. The victim testified that on the night of the crime she realized that she had seen the rapist previously. She stated she subsequently realized that he was one of the men who installed insulation in her house December 15-17, 1980. On cross-examination, the victim testified that she was interviewed by police three times during the week following the crime, but did not identify the defendant until seven weeks after the offense. She also testified on cross-examination that just prior to being shown the photo array, she was placed under hypnosis in order to refresh her memory. On re-cross-examination it was established that the only significant difference between the victim's original description of her attacker and the description given under hypnosis was that under hypnosis she added the fact the rapist had very large ears.

Agent Connell F. Smith of the Illinois Division of Criminal Investigation testified that he hypnotized the victim. He stated he had conducted hypnosis interviews since September 1978 and had attended a 30-hour seminar in hypnosis. After listening to an offer of proof, the trial court ruled that Smith was not qualified to testify before the jury

as an expert on how hypnosis affects the human mind.

Evidence found by police at the scene of the crime included the defendant's fingerprint on the rear door of the victim's residence. A volunteer weather observer for the National Weather Service, who maintained records of weather conditions in the area of the crime, testified that at no time between December 15 and January 2 was there ever more than a trace of rain or snow in the area. However, Robert C. Bartley, a latent fingerprint specialist with the Federal Bureau of Investigation, testified that it was "unlikely" that a latent fingerprint could last 16 days outdoors.

Also found at the scene was an empty beer can of the brand the defendant was known to drink and a piece of paper, undamaged by moisture, which contained instructions for sharpening drill bits of the type the defendant used regularly. Detective Roger Odum testified the defendant came to the police station to talk with him at his request. Detective Odum said the defendant told him he worked at his brother's garage until 5 p.m. on the day of the crime and then went home and ate dinner with his family until 6 p.m. The defendant consented to a search of his automobile and home and also provided the hair samples requested by police. Detective Odum testified that F.B.I. tests showed that none of the hair samples found on the bed where the rape took place were the defendant's.

Harold Cannup, Jr., who worked with the defendant, testified that he had once asked the defendant about an "unusual" odor, which the defendant attributed to the aftershave he wore. The victim had testified that her attacker wore a "very strong" aftershave.

After hearing the evidence and closing arguments of counsel, the jury was instructed on the law and retired to deliberate. The jury found the defendant guilty of rape and he was subsequently sentenced by the court to 60 years' imprisonment to be served consecutively with the term imposed for parole violation on an earlier rape conviction.

The defendant's primary argument on appeal is that the general scientific reliability of hypnosis, an underlying factor in producing the identification of the defendant, has not been demonstrated. Therefore, the defendant argues that evidence obtained with the aid of hypnosis cannot be presented at trial. A similar issue was presented in *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848. In that case, identification testimony of a prosecution witness was not rendered inadmissible by her prior hypnosis by a physician. The evidence was held admissible since the prosecution established that the hypnotist was competent, evidence indicated that suggestion had not been used

in the hypnosis, the identification was corroborated by other substantial evidence unknown to the witness and the witness had ample opportunity to view the perpetrator at the time of the crime.

Recently, the *Smrekar* test was utilized in *People v. Gibson* (1983), 117 Ill. App. 3d 270, 452 N.E.2d 1368. In *Gibson*, the defendant was convicted of home invasion, rape, deviate sexual assault, burglary and felony theft. One of the victims was able to make an identification of the assailant following a hypnotic session conducted by a police officer to refresh her recollection. The reviewing court, adhering to *Smrekar*, stated that the hypnotism of a witness goes only to the weight accorded the evidence and not to its admissibility. (See also *People v. Byas* (1983), 117 Ill. App. 3d 979, 453 N.E.2d 1141.) The *Gibson* court stressed that allowing the defense to present expert testimony to the jury to show that hypnotism may influence a witness' recollection will adequately allow the trier of fact to assess the value of the hypnosis testimony.

In *Gibson*, however, the court elaborated on the requirement that the hypnotist be competent to perform the interview. The court rejected the hypnosis-aided identification because the police officer who conducted the session had only one week of hypnosis training at police school and no foundation of competence or qualification had been shown. In addition, the court noted that as a police officer, the hypnotist was not disinterested in the success of the identification process. Accordingly, admission of the victim's identification testimony in *Gibson* was held error, but the error was ruled harmless beyond a reasonable doubt because of accomplice testimony, testimony by a friend of the defendant and scientific evidence introduced by the State's expert serologist.

The defendant in the case at bar argues that hypnotically enhanced testimony should be inadmissible because it fails to satisfy the test of *Frye v. United States* (D.C. Cir. 1923), 293 F. 1013, concerning the admissibility of scientific evidence. For the results of a scientific procedure to be admitted under the *Frye* test, there must be a showing that the technique has been generally accepted as reliable in the scientific community in which it developed. The *Gibson* court noted that since the consensus of opinion among experts is that hypnosis is not a reliable method of producing accurate recollection of events, adoption of the *Frye* rule would require that testimony enhanced through hypnosis be inadmissible. *Smrekar* and *Gibson* both rejected this analysis. As was pointed out in *Gibson*, the *Frye* test is inapplicable primarily because that standard concerns admission of expert opinion deduced from a scientific technique, not eyewitness testimony.

In addition, the reliability of the procedure in a given situation is far more important than its theoretical general reliability. Therefore, the *Gibson* court stated, "Notwithstanding the substantial authority excluding the testimony of a witness who has undergone hypnosis, we believe that requiring the State to choose between the use of hypnosis on a witness to aid in the resolution of a difficult case and the use of that witness at trial exacts too high a price." (*People v. Gibson* (1983), 117 Ill. App. 3d 270, 276, 452 N.E.2d 1368, 1373.) We agree.

■■ Although we accept the *Gibson* court's conclusion that the *Frye* rule is inapplicable in cases involving hypnotically enhanced testimony, we do not accept the *Gibson* court's application of the *Smrekar* standards. We do not feel that a person with training in hypnosis is incompetent solely because he is a police officer. Although the officer in the case at bar did not have extended or elaborate training in hypnosis, the transcript of the hypnotic session shows that his 30 hours of training were sufficient to prevent him from attempting to influence the witness. Moreover, as the victim testified at trial, her hypnotic session brought out only one descriptive detail not previously offered, that the rapist had big ears. Given that the hypnotist in the case at bar had formal training in hypnosis, we hold he was sufficiently competent to satisfy the requirements of *People v. Smrekar*. In addition to showing the hypnotist to be competent, there is no indication from the record that the procedure was fraught with suggestive influences since the victim altered the description under hypnosis in only one minor way. Other corroborative evidence did exist and the witness described how she had ample opportunity to view the rapist during the crime. Given the circumstances of this case, we find that the hypnotically enhanced testimony was helpful to the trier of fact in arriving at the truth and was properly admitted pursuant to *People v. Smrekar*.

Next, the defendant argues that the trial court erred when it ruled that the police officer who hypnotized the victim could not testify before the jury. The trial court ruled that the police officer Connell F. Smith could not testify as an expert on hypnosis. The defendant asserts on appeal that Smith's testimony about his own nonexpert experiences with hypnosis was relevant and would have helped establish the suggestiveness of the identification procedure. Therefore, the defense contends, the testimony of Connell F. Smith was erroneously excluded. We disagree.

■■ ■ The trial court ruled that Smith, a police officer with 30 hours of training in hypnosis, was not an expert on hypnosis and the workings of the human mind. Even Officer Smith characterized him-

self as a technician, trained to place people under hypnosis, question them and bring them out of hypnosis. He never purported to have the training of a psychiatrist or a psychologist. Given this testimony we cannot say the trial court abused its discretion in ruling that the police officer's qualifications as an expert on hypnosis had not been established. (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.) Moreover, the record does not show that the defendant preserved this issue for review. The only issue before the court was the police officer's qualification as an expert. The relevancy of the officer's testimony was never before the trial court. Since issues not raised in the trial court generally cannot be raised on appeal, we find that the defendant has waived this issue. *People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.

Thirdly, the defendant argues that the victim's in-court identification should have been suppressed because a pretrial photo array was impermissibly suggestive. The defendant reasons that the photo array was impermissibly suggestive because his last name could be seen on the shirt he was wearing in the picture. Reliance is placed on *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967. In *Simmons*, the defendant was convicted of armed robbery and argued that photographs viewed before the trial tainted the witnesses' in-court identifications. The Supreme Court stated that the hazards of identification by photograph are lessened by defense counsel's having the opportunity to cross-examine an eyewitness at trial and expose any misidentification. The court concluded that each case must be considered on its own facts and convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Applying this test, the Supreme Court held that the defendant's due process rights were not violated by the pretrial identification.

Illinois courts have held that it is initially the defendant's burden to establish that a pretrial identification was impermissibly suggestive. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) The State may then overcome this obstacle by a clear and convincing showing, based on the totality of the circumstances, that the identification was based solely on the witness' memory of the crime. *People v. Lee* (1973), 54 Ill. 2d 111, 295 N.E.2d 449.

In the case at bar, the State asserts that the defendant has not established that the pretrial identification was impermissibly suggestive because a portion of the name tag was obscured in the photo-

graph by a sign indicating that the photo was taken at Vienna Correctional Center. We reject this argument. The victim testified that she and her husband had discussed the possibility that Floyd Cohoon was the man who raped her and her husband then suggested to police that Cohoon was the rapist. The fact that only half of the first several letters of the defendant's name were visible in the photo does not obscure the name to someone who already knows it. The victim testified that she saw the defendant's name on the shirt in the photo, but was not influenced by it. This subjective statement does not contravene the fact that by objective standards the photo array was impermissibly suggestive. This court has held that differences among the photographs in an array, even noticeable and unnecessary differences, do not always amount to impermissible suggestiveness. (*People v. Harrell* (1982), 104 Ill. App. 3d 138, 432 N.E.2d 1163.) Nonetheless, including a suspect's name in a photo when the victim knows the suspect by name is impermissibly suggestive.

However, we cannot agree with the defendant's argument that the victim's in-court identification was inadmissible, since the record shows that there was an independent origin for the in-court identification. At trial, the victim described her attacker in detail, mentioned that he wore very strong aftershave lotion and had beer on his breath. She further stated that although her attacker stepped from behind the door when she entered the house, she did look him in the face at that time with the aid of light coming through the window.

■ Moreover, during the rape the victim was lying on her back on the bed facing her attacker as he whispered questions to her about her husband and about her sexual experiences. In light of the victim's testimony about her opportunity to observe her attacker, it is evident that her in-court identification of the defendant rested on her memory of the events as she observed them at the time of the crime, rather than resting on the suggestiveness which occurred during the photo-identification procedure. *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.

■ Fourthly, the defendant contends that the trial court erred in refusing to grant his motion *in limine* preventing impeachment at trial with his 1975 rape conviction. He asserts the ruling was prejudicial because it precluded him from testifying on his own behalf. We find this contention to be without merit. We note that the burden is on the defendant to demonstrate unfair prejudice from evidence of a prior conviction and the defendant's refusal to testify, standing alone, will not serve as a basis for concluding that he is prejudiced. (*People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358.) Instead, the

defendant's decision not to testify appears to be merely a matter of trial strategy. Accordingly, any possible error was not prejudicial and does not require reversal.

■ Finally, defendant asserts that his 60-year sentence was excessive because the trial court improperly considered his lack of remorse and the amount of penitentiary good time credit he would likely receive. As the State points out, the court's reference to the statutory good time provision at the sentencing hearing was in response to an argument on that point advanced by defense counsel. After discussing Department of Corrections policies on the release of prisoners, the judge stated, "*** my first primary concern is that Mr. Cohoon not have a third victim. If I do anything that allows him to get out and rape a third young girl, then I haven't done my job." This statement makes evident that the court's primary concern was the prevention of crime and the court's remarks about good time credit were not improper. In addition, the court's statement about the defendant's lack of remorse was also appropriate. (*People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.) Overall, the record shows that the trial court imposed the maximum sentence because of the seriousness of the crime, the presence of several aggravating factors and the absence of mitigating factors. Accordingly, the 60-year sentence cannot be considered an abuse of discretion and must be affirmed. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

JONES, J., concurring.

PRESIDING JUSTICE HARRISON, dissenting:
I respectfully dissent.

In *State v. Mena* (1981), 128 Ariz. 226, 624 P.2d 1274, the Arizona supreme court succinctly stated the rationale for excluding testimony which has been tainted by hypnosis:

"The determination of the guilt or innocence of an accused should not depend on the unknown consequences of a procedure concededly used for the purpose of changing in some way a witness' memory. Therefore, until hypnosis gains general acceptance in the fields of medicine and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion or fantasy, we feel that testimony of

witnesses which has been tainted by hypnosis should be excluded in criminal cases." 128 Ariz. 226, 231, 624 P.2d 1274, 1279.

In my view, the position articulated in *Mena* is superior to that adopted in *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848, and adhered to by the majority herein. Hypnosis simply does not seem to be understood even to the point where experts can agree on its reliability or usefulness, and it is unrealistic to expect that even the most conscientious jury is capable of rationally determining what weight should be accorded to hypnotically tainted testimony. "The degree of reliability attributable to the behavior of the truly hypnotized, cooperative individual is most difficult to ascertain, even for the skilled hypnotist. The hypnotic state induces communication with the unconscious mind of the subject and a combination of delusion, fantasy and reality may be harbored therein. *** The desire to please the hypnotist may induce the subject to mirror the attitude detected in the hypnotist's questions and his behavior." (Spector & Foster, *Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible?* 38 Ohio St. L.J. 567, 578 (1977).) Moreover, as admitted by the hypnotist in the offer of proof in the instant case, a hypnotized subject may confabulate, or create plausible but inaccurate explanations to fill in gaps in memory. In my opinion, to ask a judge or jury to meaningfully access testimony quite possibly influenced by these most subtle of subtleties is simply to ask too much. As a reviewing court which has observed neither the witness nor the hypnotist, we are especially unfit to conclude, as does the majority here, that a transcript of the hypnotic session "shows that 30 hours of training were sufficient to prevent [the hypnotist] from trying to influence the witness." Until such time as hypnosis gains general acceptance in the scientific and psychiatric communities, it should not be accorded such acceptance in the judicial process. As our supreme court clearly indicated in *People v. Baynes* (1981), 88 Ill. 2d 225, 241, 430 N.E.2d 1070, when determining that polygraph evidence was wrongly admitted, " '*** while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' (*Frye v. United States* (1923), 293 F. 1013, 1014.)"

Finally, I believe that the error committed in allowing the hypnotically tainted identification of defendant was greatly exacerbated by the use of the highly suggestive photographic lineup discussed by the majority. The victim, who apparently knew defendant's name,

emerged from the highly suggestive state created by hypnotism to view a photographic lineup in which defendant was pictured wearing a shirt with his name on it. Under these circumstances, I cannot help but conclude that the methods employed "give rise to a very substantial likelihood of irreparable misidentification." (*Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.) For these reasons, I believe that defendant's conviction should be reversed and this cause remanded for a new trial.