THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SHERMAN GIBSON, Defendant-Appellant.

Fourth District   No. 4—82—0415

Opinion filed August 22, 1983.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Defendant Sherman Gibson was convicted of the crimes of home invasion, rape, deviate sexual assault, burglary, and felony theft. (Ill. Rev. Stat. 1981, ch. 38, pars. 12—11(a)(1), 11—1, 11—3, 19—1, 16—1(a)(1).) He was sentenced to concurrent terms of 45 years for home invasion, rape, and deviate sexual assault and seven years for burglary. On appeal he raises numerous issues, including: (1) The trial court improperly admitted testimony of a witness whose memory was refreshed by hypnosis; (2) his right to the assistance of counsel guaranteed by the sixth and fourteenth amendments was violated; (3) the trial court improperly excluded an expert opinion; (4) the trial court improperly restricted cross-examination of the State's chief witness; and (5) the trial court erred in overruling his objection to testimony from the State's expert serologist. We affirm.

Since defendant has not challenged the sufficiency of the evidence to support his conviction, only a brief discussion of the facts is necessary.

In the early morning hours of June 13, 1981, the home of Stephanie and Steven White was broken into by Allen and Glenda Medley and defendant. At home were the Whites and their nine-year-old

niece. The three ransacked the house looking for property while Allen Medley and defendant took turns raping and performing acts of deviate sexual conduct on Mrs. White. During this ordeal, Mrs. White was forced to remain in the bedroom, Mr. White in the bathroom, and their niece in the living room. The only light which was on during the crimes was a fluorescent "grow light" in the living room of the small, two-bedroom dwelling. After about an hour, the trio left in the Whites' automobile, dropped off some property, and went to the home of a friend, Carolyn Madison. Madison testified that she saw the Medleys and defendant in her home the following morning in possession of certain items of property which were taken from the Whites' home.

The linchpin of the State's case was Glenda Sue Medley, who related the above events in substantial detail. She also was instrumental in leading the police to the defendant. Four days after the offense, she informed a Detective Murphy, of the Springfield police department, that she was present at the Whites' home on the morning in question and had aided her cousin Allen and defendant steal the property.

Debra Fesser, the State's expert serologist testified that she performed tests upon samples of clothing and body fluids taken from the victim and discovered the presence of seminal material which she concluded were consistent with the blood types of defendant and Allen Medley.

Both victims testified at trial, but only Mrs. White was able to make an in-court identification of the defendant. She also related, without objection, her tentative identification of the defendant at a pretrial lineup and her positive identification of defendant which she made from a photograph of the same lineup. The latter occurred following a hypnotic session which was conducted by a Detective Sample to help the witness refresh her recollection. Mrs. White testified that, while she was previously unable to clearly see her assailants, "[u]nder hypnosis I was able to recall walking out of the bedroom, confronting the men. At that point I got a very good image of what he looked like."

■ Defendant's first series of contentions relate to the admission of the testimony of Stephanie White, who was hypnotized prior to trial in an attempt to refresh her recollection. Defendant argues that: (1) The prior hypnosis of the victim rendered her incompetent to testify to subjects inquired into under hypnosis (see *People v. Tait* (1980), 99 Mich. App. 19, 297 N.W.2d 853; *Commonwealth v. Nazarovitch* (1981), 496 Pa. 97, 436 A.2d 170; *People v. Shirley* (1982), 31 Cal. 3d 18, 641 P.2d 775, 181 Cal. Rptr. 243; *State ex rel. Collins v. Superior*

*Court* (1982), 132 Ariz. 180, 644 P.2d 1266; *Collins v. State* (1982), 52 Md. App. 186, 447 A.2d 1272); and (2) the witness' testimony should have been excluded because the hypnosis did not satisfy the safeguards for the admission of hypnotically enhanced testimony set out in *State v. Hurd* (1981), 86 N.J. 525, 432 A.2d 86.

In *People v. Smrekar* (1979), 68 Ill. App. 3d 379, 385 N.E.2d 848, we first addressed the problems associated with the use of hypnosis as an aid in refreshing a witness' recollection. In that case, a witness to an arson murder was hypnotized by a physician to help her refresh her recollections of the occurrence in an attempt to identify the arsonist. Prior to hypnosis, the witness described the probability of identifying the assailant as fifty-fifty, but after being hypnotized the witness was able to make a positive identification. On appeal, we held, over dissent, that the fact that a witness had been hypnotized prior to trial affected only the weight of the evidence and not its admissibility. We found the admission of the witness' testimony to be proper since the record as a whole demonstrated (1) that the hypnotist was competent, having used hypnosis in his medical practice for 10 years; (2) that the procedure was not fraught with suggestive influences; (3) that the witness' identification was corroborated by other substantial evidence unknown to the witness when she made the identification; and (4) the evidence showed that at the time of the occurrence, the witness had an ample opportunity to observe the assailant. Defendant urges us to abandon this position and follow either the approach of those courts which exclude hypnotically refreshed testimony altogether or impose procedural safeguards to minimize the inherent dangers in its use. The defendant relies on a number of out-of-State authorities, listed above, which were decided following our decision in *Smrekar*. For reasons which follow, we adhere to *Smrekar* because we believe that it strikes the proper balance between the possible benefit in the use of hypnosis as an aid in refreshing recollection and the disadvantages and problems associated with its use.

A review of the decisions cited by defendant which consider the admissibility of the testimony of a witness who has undergone hypnosis reveals that the courts have reached no unanimity on the question. Some courts hold that the previous hypnotism of a witness is a matter affecting only the credibility of the witness' testimony and not its admissibility. (See *United States v. Adams* (9th Cir. 1978), 581 F.2d 193, *cert. denied* (1978), 439 U.S. 1006, 58 L. Ed. 2d 683, 99 S. Ct. 621; *Clark v. State* (Fla. App. 1979), 379 So. 2d 372; *State v. McQueen* (1978), 295 N.C. 96, 244 S.E.2d 414.) A second approach, most notably *State v. Hurd* (1981), 86 N.J. 525, 432 A.2d 86, allows the intro-

duction of testimony refreshed through hypnosis upon a preliminary showing that the use of hypnotism is likely to restore memory comparable in accuracy to normal recall and that a six-part standard has been followed. Finally, other courts have concluded that a witness who has been hypnotized prior to trial is incompetent to testify to events occurring during hypnosis or the fruits of the hypnotic procedure. An exhaustive opinion indicative of this approach is *People v. Shirley* (1982), 31 Cal. 3d 18, 641 P.2d 775, 181 Cal. Rptr. 243. See also *State v. Mack* (Minn. 1980), 292 N.W.2d 764; *Collins; Nazarovitch.*

This latter group of cases, excluding the testimony of a witness who has been hypnotized, frequently employ the rationale that hypnotism presents the same issues of admissibility as are presented when the results of a lie detector test or other scientific test are sought to be admitted. In order for the results of a scientific procedure to be admitted, there must be a showing that the technique has been generally accepted as reliable in the scientific community in which it developed. (*Frye v. United States* (D.C. Cir. 1923), 293 F. 1013; see *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.) Since the concensus of opinion among the experts is that hypnosis is not a reliable method of producing historically accurate recall (*State v. Hurd* (1981), 86 N.J. 525, 538, 432 A.2d 86, 92, and authorities cited therein), once the *Frye* rule is adopted as the standard of admission, it becomes a necessary conclusion that testimony enhanced through hypnosis is inadmissible. Courts applying the community acceptance standard and excluding testimony from a witness who has been hypnotized include *Mack, Shirley, Nazarovitch, Collins, State v. Mena* (1981), 128 Ariz. 226, 624 P.2d 1274, and *State v. Palmer* (1981), 210 Neb. 206, 313 N.W.2d 648. An example of this reasoning is found in *Mena:*

> "While the medical use of hypnosis for certain therapeutic purposes has been approved by the American Medical Association, 168 J.A.M.A. 186-87 (Sept. 13, 1958), the use of hypnosis to aid in accurate memory recall is not yet generally accepted. 'It remains controversial whether hypnotic suggestions can improve memory effectively.' 9 Encyclopedia Britannica, 133, 137 (1979).
>
> The determination of the guilt or innocence of an accused should not depend on the unknown consequences of a procedure concededly used for the purpose of changing in some way a witness' memory. Therefore, until hypnosis gains general acceptance in the fields of medicine and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion or fantasy, we feel that testimony of

witnesses which has been tainted by hypnosis should be excluded in criminal cases." 128 Ariz. 226, 231, 624 P.2d 1274, 1279.

This is the position taken by defendant, who asserts in his brief that "[i]n sum, there is no procedure which can be utilized in hypnosis which can be said with surety to yield accurate results." This was also the position taken by Mr. Justice Craven in his dissenting opinion in *Smrekar*.

We found this result unpersuasive in *Smrekar* and again reaffirm our rejection of this position. The general acceptance in the community test is not applicable to the admission of hypnotically enhanced testimony because that standard is concerned with the admission of expert opinion deduced from the results of a scientific technique and not the admissibility of eyewitness testimony. Secondly, application of that standard would single out hypnotically refreshed testimony and impose a requirement that the scientific community agree as to its accuracy in aiding recall, whereas a similar standard is not imposed on ordinary eyewitness testimony not refreshed through hypnosis. (*State v. Armstrong* (1983), 110 Wis. 2d 555, 329 N.W.2d 386.) Finally, application of this test focuses on the general reliability of the procedures, thereby obscuring the more important question of whether the procedure used in a given situation was reliable and nonsuggestive. Notwithstanding the substantial authority excluding the testimony of a witness who has undergone hypnosis, we believe that requiring the State to choose between the use of hypnosis on a witness to aid in the resolution of a difficult case and the use of that witness at trial exacts too high a price.

We acknowledged in *Smrekar* that hypnotism can be a valuable tool in the hands of a competent practitioner. We continue to adhere to this view but are not unmindful of the dangers associated with its use. (For a discussion of the nature of hypnosis, its effects, and problems, see Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Cal. L. Rev. 313 (1980) (hereinafter Diamond); and Spector & Foster, *Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible?* 38 Ohio St. L. J. 567 (1977).) A review of the expert testimony presented by the defendant at trial and the several decisions which have addressed the issue of the admissibility of hypnotically refreshed testimony indicates that hypnosis poses special problems which require adequate safeguards for its use.

A subject under hypnosis is extremely receptive to suggestions from the hypnotist, intentionally or unintentionally communicated and

experiences a desire to please the hypnotist by reacting to suggestive overtures. (*People v. Shirley* (1982), 31 Cal. 3d 18, 63, 641 P.2d 775, 802, 181 Cal. Rptr. 243, 271; Diamond, at 333.) This is, in fact, the very premise of hypnosis which is defined as a highly suggestible state into which a willing subject is induced by a skilled therapist. (*State v. Mack* (Minn. 1980), 292 N.W.2d 764, 765.) Further, the memory developed during hypnosis may be a collection of actual events, irrelevant actual events, pure fantasy, and details supplied to make a logical whole. (Diamond, at 335.) Once the person has been hypnotized, moreover, he will be imbued with a sense of conviction in the validity of his memories which have been refreshed by hypnosis, making it difficult to effectively test a witness' recollection, recall, and perception during cross-examination. *People v. Shirley* (1982), 31 Cal. 3d 18, 65, 641 P.2d 775, 803-04, 181 Cal. Rptr. 243, 272.

In *Hurd*, the New Jersey Supreme Court acknowledged these problems, but held that the testimony of a previously hypnotized witness could be admitted if a two-part test was satisfied. The court must first insure that the use of hypnosis in a particular case is reasonably likely to result in recall comparable in accuracy to a normal human memory, and secondly, a six-point procedural test must be followed. These requirements include: (1) A psychiatrist or psychologist experienced in hypnosis must conduct the session; (2) the professional conducting the hypnotic session should be independent of and not regularly employed by the prosecution or defense; (3) any information given to the hypnotist must be recorded; (4) before inducing hypnosis the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them and the hypnotist should carefully avoid influencing the description through leading questions; (5) all contacts between the hypnotist and the subject must be recorded, and (6) only the hypnotist and the subject should be present during the entire hypnotic session which should be recorded by videotape. These requirements must be established by the proponent by clear and convincing evidence.

We do not adopt *in toto* the procedural standards suggested in *Hurd* since our four-part test in *Smrekar* addresses the same dangers in the use of hypnotically refreshed testimony. Further, we see no reason to depart from our holding in *Smrekar* that the previous hypnotism of a witness goes only to the weight and not the admissibility of the evidence. By allowing the defendant to present expert testimony to the jury to show that hypnotism of a witness may influence that witness' recollection, the trier of fact can adequately assess the testimony from this perspective. Protection against the possibility of con-

fabulation, distortion, and the "hardening" of a witness' memory is also insured by requiring the trial court to find that the *Smrekar* requirements are satisfied. If either the State or defense propose to introduce the testimony of a previously hypnotized witness, specific notice of such fact should be given to the opposite party so that a timely suppression motion can be made and ruled on in light of the four-part test we adopted in *Smrekar*.

■ Turning to the facts at bar, we hold that the State failed to satisfy the requirement of *Smrekar* that the hypnotist be competent to perform the interview. Further, we conclude that *Smrekar* requires as a part of the requirement that the hypnotist be competent, a subsidiary showing, in line with *Hurd*, that he is independent of and not closely associated with either the prosecution or defense. This will further insure against the possibility of suggestion occurring during the hypnotic procedure. We also discourage the practice of allowing police personnel and the assistant State's Attorney to be present during the interview, as occurred here, since the possibility of suggestive influence is only compounded.

Here there was a clear want of necessary elements of a foundation for the use of the testimony of a witness whose recollection had been refreshed by hypnosis and the trial court erred in admitting the testimony. The training of Detective Sample in the practice of hypnosis was the product of one week at a police school. He had used hypnosis in actual case interviews two or three times prior to this interview. It seems clear that no foundation of competence or qualification for the use of the technique is shown by the record.

■ Again, as an investigative officer, it is clear that Sample cannot be accepted as disinterested in procuring the success of the identification sought from hypnosis, and he had access to knowledge which might, or might not, be actually available to the witness. We find, however, that the admission of the identification testimony by Mrs. White was harmless error. In short, the evidence of defendant's guilt is shown to be overwhelming without consideration of the identification which she made. The testimony of defendant's accomplice, Glenda Medley, and that of Carolyn Madison and Debra Fesser overwhelmingly established defendant's guilt beyond a reasonable doubt. See *State v. La Mountain* (1980), 125 Ariz. 547, 611 P.2d 551.

■ Defendant next argues that his sixth and fourteenth amendment right (U.S. Const., amends. VI, XIV) to the effective assistance of counsel was denied because the pretrial hypnotism of the victim took place without his counsel's presence. We disagree.

In *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149,

87 S. Ct. 1926, the Supreme Court held that a pretrial, post-indictment lineup was a critical stage of the trial so potentially fraught with the possibility of prejudice that an accused should be provided with counsel. Distinguishing the pretrial lineup from other pretrial confrontations, such as an analysis of the accused's blood or hair, the court noted that "[k]nowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination \*\*\*." (388 U.S. 218, 227-28, 18 L. Ed. 2d 1149, 1158, 87 S. Ct. 1926, 1932.) With respect to pretrial lineups, the court found that a defendant can seldom reconstruct the events occurring at a lineup identification to conduct an effective cross-examination at trial. Defendant argues that hypnosis is also a critical stage of trial because of the inability of defense counsel to effectively cross-examine a previously hypnotized witness due to the lack of knowledge of the subtle, suggestive influences which may be present during the hypnotic interview.

The *Wade* decision makes clear that the defendant should be provided with counsel's assistance at those pretrial confrontations that are critical. At a hypnotic session there is no confrontation with the defendant whatsoever. We see no reason to make the hypnotic interview a critical confrontation by requiring counsel's presence. In *United States v. Ash* (1973), 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568, the Supreme Court held that a pretrial photo identification was not a critical stage of criminal proceedings because the accused was not confronted by the State. In language applicable here, the majority opinion notes:

> "The structure of *Wade*, viewed in light of the careful limitation of the Court's language to 'confrontations,' makes it clear that lack of scientific precision and inability to reconstruct an event are not the tests for requiring counsel in the first instance. These are, instead, the tests to determine whether confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation. \*\*\*
>
> \*\*\* Judge Friendly, writing for the Second Circuit in *United States v. Bennett*, 409 F.2d 888 (1969), recognized that the 'criticality' test of *Wade*, if applied outside the confrontation context, would result in drastic expansion of the right to counsel." (413 U.S. 300, 315-16, 37 L. Ed. 2d 619, 630, 93 S. Ct. 2568, 2576-77.)

We hold that defendant has no right to have counsel present during a

pretrial hypnotic interview of a State's witness. See *People v. McDowell* (1980), 103 Misc. 2d 831, 427 N.Y.S.2d 181.

██ Defendant next argues that the absence of his appointed counsel at a pretrial lineup is reversible error. Defendant was arrested on June 17, 1981, and the following day an attorney was appointed on his behalf. On June 26, defendant appeared with counsel at a preliminary hearing at the conclusion of which an order was entered, requiring defendant to appear in a lineup that day or as soon thereafter as practical at the Sangamon County jail. The following day a lineup was conducted at the county jail without defendant's counsel. On appeal, defendant argues it was error to introduce the victim's out-of-court identification since defendant's counsel was not present at the pretrial lineup.

We conclude that the record contains uncontradicted evidence that the defendant knowingly and intelligently waived his right to counsel. At trial, Detective Natale testified that he read defendant a statement of the rights provided by *Wade* from a card provided to the police for that purpose, and that the defendant orally waived those rights. In *People v. Anton* (1981), 100 Ill. App. 3d 344, 426 N.E.2d 1070, the court held that a defendant had knowingly and intelligently waived his right to counsel at a lineup where he was orally advised of such rights and stated that he did not wish counsel's presence. The uncontradicted evidence shows that defendant likewise waived his right to have counsel present at the pretrial lineup.

██ Defendant also complains that Supreme Court Rule 413(b) (87 Ill. 2d R. 413(b)) was violated since defendant and his counsel were not notified of the time and place of the lineup and the photographing of that lineup. The evidence, however, indicates that defendant and his counsel were present in court the day before the lineup at which time the court entered a written order directing the defendant to appear in a lineup that day or "as soon thereafter as practicable to be held at the Sangamon County Jail." Although defendant's counsel testified that he was not renotified the following day, the above notice was sufficient to apprise defendant and his counsel of the necessity of their presence. The lineup and photographing occurred contemporaneously with the previous order, and no subsequent renotification was necessary under these circumstances.

██ Defendant next claims that the trial court improperly excluded an expert opinion of Dr. Leon Jackson concerning the possible suggestive effects that hypnosis had on the witness' identification of the defendant. The State argues the trial court properly excluded the opinion since all of the material facts were not included in the defend-

ant's hypothetical question and some of the assumed facts were not in evidence. The trial court sustained the State's objection to the hypothetical question because a videotape of the hypnotic interview had not been introduced into evidence. Previously the court had ruled that the videotape of the interview was admissible but that defense counsel would be required to play the entire four-hour tape to the jury and could not select isolated portions. Rather than show the jury the entire tape, defense counsel attempted to demonstrate that subtle suggestions had taken place during the interview by means of a hypothetical question directed to his expert witness.

In propounding a hypothetical question to an expert, the elements of the hypothetical must have an evidentiary basis in the record and the hypothetical should contain all material facts to form the basis of the opinion. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 705.1, at 383 (3d ed. 1979).) The State failed to point out at trial what assumed facts lacked evidentiary support, and we note that the jury had already heard the testimony of the hypnotist and the investigating officers relating the hypnotic procedure and the witness' subsequent identification. The State's argument on this ground is not supported by the record. The further suggestion that all material facts were not included in the hypothetical suffers from similar weaknesses since the State likewise failed to disclose what those material facts were. In fact, at trial the State's Attorney complained that the hypothetical was "way too long and confusing." In *Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 312 N.E.2d 593, the supreme court, quoting from McCormick on Evidence, noted that " '[t]he more expedient and more widely prevailing view is that there is no rule requiring that all material facts be included [in the hypothetical question]. The safeguards are that the adversary may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer.' " (57 Ill. 2d 475, 480, 312 N.E.2d 593, 595.) We conclude that the trial court erred in excluding the response to the question propounded to defendant's expert. Any error in excluding Dr. Jackson's opinion was, nevertheless, harmless. The evidence of defendant's guilt was substantial, and defendant was able to present evidence to the jury that hypnosis was likely to result in a mistaken identification. Defendant's expert testified at length on the dangers and problems in using hypnosis and was not confined to the single, hypothetical question and response. It is a well-established rule that the rejection of evidence is not prejudicial in

a criminal case where substantially the same evidence has been admitted at the trial. (*People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.) We find no prejudice in excluding the expert's opinion.

■ During the testimony of accomplice Glenda Medley, the defendant conducted a probing cross-examination to disclose her bias, prejudice, and interest in the case. Medley agreed that she was originally charged with home invasion and that she received a reduced charge of burglary in exchange for her testimony. She could not recall whether the penalty for home invasion was greater than that for burglary. Defense counsel called defendant's former attorney who related that he was present during Medley's arraignment, at which time she was advised of the penalties for home invasion and burglary. He testified that home invasion carries a substantially greater penalty than burglary. Over objection, the trial court instructed counsel not to disclose the range of penalties for home invasion since defendant was charged with this crime. Defendant assigns error to this ruling.

We decided this same issue in *People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364, and found no error in the trial court's restricting the cross-examination of a State's witness to prevent the disclosure to the jury of the possible sentence that the witness had faced when that witness was charged with the same crime as the defendant. We held that evidence of the specific penalty was immaterial and irrelevant to the jury's consideration of the facts and that the trial court had placed a reasonable restriction on cross-examination. We continue to follow *Lake*.

■ Defendant next argues that the trial court erred in allowing the State to admit into evidence the statement of Glenda Medley which she made to the police on June 17, 1981, and which was consistent with her trial testimony. Although the State argues waiver since the objection was not included in his post-trial motion, we decline to treat that issue as waived since a timely objection was made at trial. *People v. Clark* (1982), 108 Ill. App. 3d 1071, 440 N.E.2d 387.

Defendant argues that the admission of the prior consistent statement was improper because at the time it was made Medley harbored ill will toward the defendant. The State argues that the statement was made before the witness could have foreseen any potential benefit and before any motive for false testimony arose. See *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113.

Defendant's only authority, *Waller v. People* (1904), 209 Ill. 284, 70 N.E. 681, states the rule that evidence of a prior consistent statement is inadmissible unless its admission is to rebut a charge of re-

cent fabrication, but no issue was raised there concerning whether the motive to fabricate existed at the time of the prior statement. It is clear that for a prior consistent statement of a witness to be admissible the statement must be made before any motive to fabricate comes into existence. (*Clark.*) During the cross-examination of Medley, defendant sought to disclose two possible motives for her to testify falsely. Counsel questioned her about the reduced charges in exchange for her testimony and also about the fact that a shooting occurred between her brother and cousin, Charles and Allen Medley, and defendant Sherman Gibson. Medley acknowledged that she had been shot at in Springfield and had originally told the police that she was not sure who it was. On the day Medley made the prior statement implicating the defendant, she told them that it was the defendant who had shot at her.

The State's argument that the prior statement was made before Medley could have foreseen the possibility of her reduced charge is factually correct, but does not account for Medley's other motives to testify against the defendant. These motives were extant when Medley made the statement and could have exerted a similar pressure on her to testify against him; it was made at a time when the Medleys and defendant were allegedly shooting at one another. For this reason it cannot be said to have been made at a time when no motive to testify against the defendant existed. Its admission was erroneous, but the error is harmless. The evidence so strongly indicates defendant's guilt that the error cannot be regarded as prejudicial to the extent of requiring reversal. *People v. Helm* (1968), 40 Ill. 2d 39, 237 N.E.2d 433.

Defendant's final argument concerns the admissibility of testimony of Debra Fesser, the State's expert serologist. At trial, Fesser identified substances taken from the victim and stated that seminal material found was consistent with the blood types of defendant and Allen Medley. Over defense objection, she also related the results of her analysis of blood and saliva samples taken from Allen Medley. Defendant made a general objection at trial and alleged in his post-trial motion that Fesser's testimony relating Medley's blood type was immaterial and irrelevant. Defendant now argues that the State did not lay a proper foundation for the admission of the evidence. Defendant relies solely on *People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.

Objections to evidence not properly made in the trial court cannot be urged for the first time on review. (*People v. Nash* (1980), 90 Ill. App. 3d 612, 413 N.E.2d 16.) The only objection arguably preserved

for review is that it is immaterial and irrelevant. Clearly, however, the evidence tended to prove a fact at issue at trial: whether the victim had been raped and sexually assaulted by the defendant. The admission of testimony of Medley's blood type was necessary to explain the fact that two types of seminal fluid were found in the victim, both of which were consistent with Medley's and defendant's blood types. *Rogers* found reversible error in admitting physical evidence without establishing a chain of custody for that evidence. At bar, no chain of custody was necessary since Medley's blood was not admitted into evidence.

For the foregoing reasons, the judgment of conviction and sentence are affirmed.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.