THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHERMAN GIBSON, Defendant-Appellant.

Fourth District    No. 4—03—0504

Opinion filed May 12, 2005.

McCULLOUGH, J., dissenting.

Daniel D. Yuhas and Susan M. Wilham, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten,

Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In May 1982, defendant, Sherman Gibson, was convicted of home invasion, rape, deviate sexual assault, burglary, and felony theft. Ill. Rev. Stat. 1981, ch. 38, pars. 12—11(a)(1), 11—1, 11—3, 19—1, 16—1(a)(1). He was sentenced to concurrent terms of 45 years in prison for home invasion, rape, and deviate sexual assault and 7 years in prison for burglary. On direct appeal, this court affirmed his convictions. See *People v. Gibson*, 117 Ill. App. 3d 270, 452 N.E.2d 1368 (1983). Defendant now appeals the trial court's order denying his motion for forensic testing pursuant to section 116—3 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/116—3 (West 2002)). We reverse and remand.

## I. BACKGROUND

In June 1981, intruders, armed with a gun, broke into a home in Springfield, Illinois. Present in the home were the husband and wife, their infant son, and their nine-year-old niece. The intruders confined the husband in the bathroom, ransacked the home looking for property, and performed acts of rape and deviate sexual assault on the wife. The only light in the home came from a fluorescent "grow light" in the living room. After approximately one hour, the intruders left, taking some of the victims' personal property, including their vehicle, stereo, wedding rings, wallets, and credit cards.

At defendant's trial, both the husband and wife testified concerning the details of the break-in. Each described two of the intruders as being male, one wearing a green, hooded sweatshirt and thick white gloves and the other wearing lighter-colored pants. The wife testified she was sexually assaulted by each male intruder but only the white-gloved intruder assaulted her anally. Further, she initially believed three male intruders were present in her home, but she could not make an absolute positive identification of any of the intruders immediately following the break-in. However, after being hypnotized by detectives, the wife was able to identify the intruder in the white gloves as defendant.

The couple's nine-year-old niece also testified. She stated she was sleeping on the victims' living-room couch when she heard a door rattle and woke up to find a black female standing over her. The woman told her to cover her head with a blanket, and she complied. She further testified that a man asked her age and felt her stomach. She then stayed on the couch with her head covered until she was tied up by a man wearing gloves and all of the intruders left.

The State further presented the testimony of Glenda Sue Medley, who testified that she, defendant, and her cousin Allen Medley were the individuals who broke into the couple's home. Her testimony as to the events of the break-in was substantially similar to that of the victims and their niece. Specifically, she testified (1) she asked the couple's niece to cover her head with a blanket; (2) defendant had a gun and was wearing gloves; (3) the husband was confined in the bathroom; (4) she heard the couple's infant son crying in the area of the bedrooms; and (5) the couple's vehicle, stereo, wedding rings, and wallets were taken during the incident. Additionally, Glenda Sue testified she, Allen Medley, and defendant went to Carolyn Madison's home shortly after the break-in.

Carolyn Madison stated she saw the Medleys and defendant hours after the break-in and testified they had in their possession property belonging to the couple. This property included the wife's wallet, credit cards, and nurse's certificate. Madison also stated she used the wife's credit card to purchase gas for her mother's car.

The State's expert serologist, Debra Fesser, testified she tested blood samples taken from defendant, Allen Medley, and the female victim and determined their blood types to be AB, O, and A, respectively. Fesser also tested physical evidence recovered from the wife's person and clothing and testified as to the discovery of the presence of seminal material that was consistent with the blood types of both defendant and Allen Medley. Additionally, a rectal swab taken from the female victim tested positive for the presence of semen consistent with only defendant's blood type. Further, a white shirt smeared with blood was recovered from the scene. The wife testified she believed the intruder with the white gloves had used it to wipe off a metal box, and she assumed the blood on it was his. Fesser testified the bloodstains on the white shirt were type AB and consistent with defendant's blood type.

Defendant was convicted and sentenced as stated. On direct appeal, he argued the female victim was incompetent to testify concerning subjects refreshed by hypnosis because the hypnosis did not satisfy the safeguards for admission of hypnotically enhanced evidence. *Gibson*, 117 Ill. App. 3d at 273-74, 452 N.E.2d at 1371. This court concluded the trial court erred in admitting such testimony because the foundation for its use was lacking. *Gibson*, 117 Ill. App. 3d at 278, 452 N.E.2d at 1374. However, it nevertheless affirmed defendant's conviction, finding any error was harmless because other evidence was sufficient to sustain defendant's conviction. *Gibson*, 117 Ill. App. 3d at 278, 452 N.E.2d at 1374. This court further concluded, although expert opinion about the suggestive effects of hypnosis was improperly

excluded, such error was also harmless. *Gibson*, 117 Ill. App. 3d at 281, 452 N.E.2d at 1376.

In December 1989, defendant filed a postconviction petition, raising claims of ineffective assistance of counsel for failure to challenge the female victim's hypnotically refreshed testimony and to present testimony of an alibi witness. The trial court dismissed defendant's petition, and he appealed. On appeal, this court reversed and remanded with directions to hold an evidentiary hearing on defendant's claim of ineffective assistance of counsel. *People v. Gibson*, 244 Ill. App. 3d 700, 704, 612 N.E.2d 1372, 1375 (1993). After a hearing, the court again denied defendant's petition.

In September 2001, defendant filed a *pro se* motion for forensic testing of evidence obtained in connection with his trial pursuant to section 116—3 of the Criminal Procedure Code (725 ILCS 5/116—3 (West 2000)). In October 2002, after counsel was appointed to review defendant's motion, a memorandum in support of his motion was filed. In April 2003, defendant testified at a hearing on the motion, and the trial court took the matter under advisement. In May 2003, the court denied defendant's motion, stating (1) defendant failed to show a *prima facie* case that identity alone resulted in his conviction and (2) numerous scientific tests were available to establish the relevant forensic evidence was consistent with defendant and therefore no new, noncumulative evidence relevant to defendant's assertion of actual innocence would be produced.

This appeal followed.

## II. ANALYSIS

On appeal, defendant argues he has satisfied the requirements of section 116—3 of the Criminal Procedure Code (725 ILCS 5/116—3 (West 2002)) and is therefore entitled to have blood and semen samples taken in connection with his case subjected to forensic testing. He contends such testing is warranted because (1) deoxyribonucleic acid (DNA) testing was not available at the time of his 1982 trial, (2) identity was the main issue at trial, and (3) this evidence is materially relevant to his ongoing assertion of actual innocence.

■ Section 116—3 of the Criminal Procedure Code permits a defendant to obtain forensic testing of physical evidence when such testing was not available at the time of his or her trial and when certain statutory requirements have been met. *People v. Savory*, 197 Ill. 2d 203, 208, 756 N.E.2d 804, 808 (2001). Section 116—3 states as follows:

> "(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the

performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. \*\*\*

    (b) The defendant must present a prima facie case that:

        (1) identity was the issue in the trial which resulted in his or her conviction; and

        (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

    (c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

        (1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence; [and]

        (2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116—3 (West 2002).

A trial court's decision to deny a motion for forensic testing is subject to *de novo* review. *People v. Shum*, 207 Ill. 2d 47, 65, 797 N.E.2d 609, 620 (2003).

### A. *Prima Facie* Case Establishing Identity as the Central Issue

■ Defendant first contends the trial court erred when it concluded he failed to present a *prima facie* case that identity was the central issue at his trial. Specifically, he maintains this burden has been met because (1) he continually professed his innocence, and (2) evidence tying him to the crime was based on (a) the now-inadmissible hypnotically refreshed identification of the victim, (b) the testimony of an obviously biased codefendant, and (c) blood and semen evidence consistent with his blood type but which failed to exclude the possibility of alternative perpetrators. The State argues defendant's section 116—3 motion, his memorandum in support of motion, and his testimony at his motion hearing were all insufficient to make a *prima facie* case identity was the issue at trial.

Section 116—3 requires a defendant to present a *prima facie* case "identity was the issue in the trial which resulted in his or her conviction." 725 ILCS 5/116—3(b)(1) (West 2002). This section has been interpreted to require a defendant to show identity was a central issue at trial. *People v. Johnson*, 205 Ill. 2d 381, 393, 793 N.E.2d 591, 599 (2002). Generally, in the context of a criminal case, identity refers "to whether the defendant was indeed the perpetrator or whether

somebody else committed the crime." *People v. Hockenberry*, 316 Ill. App. 3d 752, 756, 737 N.E.2d 1088, 1091 (2000). The supreme court has found where a defendant has consistently maintained his innocence and the only direct evidence tying him to the crime is identification by the victim, a *prima facie* case as to identity being the central issue at trial has been presented. See *Shum*, 207 Ill. 2d at 65-66, 797 N.E.2d at 620-21. Further, a movant fails to make out a *prima facie* case when he or she fails to present at least some evidence on every element essential to his or her cause of action. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45 (1980).

Here, the State argues defendant has failed to present a *prima facie* case that identity was the central issue at trial. Specifically, it points out defendant's section 116—3 *pro se* motion completely failed to allege anything relating to the issue of identity and defendant's memorandum in support of the motion filed by his attorney makes only the conclusory allegation that identity was the central issue at defendant's trial. Further, the State contends defendant's testimony at the hearing on his motion also did not present a sufficient quantum of evidence to satisfy his statutory burden to present a *prima facie* case.

Although the State is correct as to the deficiencies in defendant's motion and defense counsel's memorandum, such error is not fatal because defendant's testimony at the hearing on his motion presented evidence sufficient to support his allegation identity was a central issue at his trial. At the hearing, defendant testified the victim identified him at trial as the perpetrator; however, he has nevertheless always maintained his innocence. Further, defendant testified concerning the State's forensic evidence that linked him to the crime but did not conclusively establish him as the perpetrator.

The State argues defendant's testimony was false because he testified the only evidence presented by the State was the victim's identification testimony and circumstantial forensic evidence. However, a review of defendant's testimony fails to show he stated this was the only evidence presented by the State. Further, although defendant's testimony failed to reveal other evidence the State presented against him, the State neither objected to the testimony it now characterizes as false nor did it cross-examine defendant to elicit testimony about the other evidence it presented against defendant at trial.

Additionally, the facts of this case are similar to the circumstances of *Shum*, wherein the supreme court, citing *Johnson*, 205 Ill. 2d 381, 793 N.E.2d 591, held it was error to conclude identity was not the issue at trial where the defendant maintained his innocence of the

crime and the only direct evidence was the surviving victim's identification of him as the perpetrator. *Shum*, 207 Ill. 2d at 65-66, 797 N.E.2d at 620-21. The court reached this conclusion even though the trial court had determined identity was not at issue because the victim was previously acquainted with the defendant. *Shum*, 207 Ill. 2d at 64-65, 797 N.E.2d at 620.

Here, the record amply supports defendant's contention identity was the central issue in his case. First, the State's case against defendant was primarily based upon (1) the hypnotically refreshed identification testimony of the female victim, (2) the testimony of codefendant Glenda Sue, and (3) the results of testing performed on blood and semen evidence found to be consistent with defendant's blood type but which did not conclusively establish defendant as the perpetrator. Additionally, at trial, defendant did not contest that the home invasion, rape, deviate sexual assault, burglary, or felony theft occurred. Nor did he admit to commission of the crime but allege an affirmative defense that would have eliminated identity of the perpetrator as an issue. See *People v. Urioste*, 316 Ill. App. 3d 307, 736 N.E.2d 706 (2000). Defendant's only contention was that he was not the perpetrator and someone else committed the crime.

Defendant's identity was the central issue at his trial, and his testimony at the hearing on his section 116—3 motion sufficiently presented a *prima facie* case on this. Therefore, the trial court erred in finding defendant failed to present a *prima facie* case identity was the central issue at his trial.

## B. Materially Relevant to Defendant's Assertions of Actual Innocence

■ Defendant next argues the trial court erred when it determined the requested testing would not produce new, noncumulative evidence materially relevant to his assertions of actual innocence because, as stated by the court, "[n]umerous scientific tests were available to establish the blood results taken from the victim were consistent with the [d]efendant and co[ ]defendant." Specifically, defendant contends if the test results show blood and semen evidence collected from the victim do not match him, his claim someone else committed the crimes will be significantly advanced.

Section 116—3(c)(1) requires a trial court to allow testing when it determines such testing has the "scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence." 725 ILCS 5/116—3(c)(1) (West 2002). Evidence does not have to have the potential to completely exonerate a defendant to be materially relevant. *Savory*, 197 Ill. 2d at 214, 756

N.E.2d at 811. Instead, materially relevant evidence is that which tends to significantly advance a defendant's claim of actual innocence. *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 810-11. Further, whether the evidence at issue is materially relevant "requires a consideration of the evidence introduced at trial, as well as an assessment of the evidence defendant is seeking to test." *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811.

In *Savory*, the defendant was convicted of the stabbing deaths of a brother and sister. *Savory*, 197 Ill. 2d at 205, 756 N.E.2d at 806. The trial court denied the defendant's section 116—3 motion to have bloodstained trousers, which the State alleged the defendant wore during the commission of the crimes, subjected to DNA testing. *Savory*, 197 Ill. 2d at 208-09, 756 N.E.2d at 808. The supreme court affirmed, finding the evidence the defendant sought to test was not materially relevant to his claim of actual innocence. *Savory*, 197 Ill. 2d at 214, 756 N.E.2d at 811.

The court reasoned testimony regarding the source of the bloodstain on the trousers was a collateral issue at the defendant's trial and not central to the State's evidence of guilt. *Savory*, 197 Ill. 2d at 215, 756 N.E.2d at 811. It concluded a greater part of the State's case concerned the defendant's knowledge of the crime scene and his inculpatory statements to others hours after the crimes were committed. *Savory*, 197 Ill. 2d at 215, 756 N.E.2d at 811. Further, the court concluded even a test result in the defendant's favor would not significantly advance his claims of innocence and would only exclude one minor item from evidence of guilt. *Savory*, 197 Ill. 2d at 215, 756 N.E.2d at 811-12.

Initially, we note although defendant refers generally to blood and semen evidence in his brief to this court, he only references physical evidence taken in connection with a "rape kit" in his *pro se* motion for forensic testing, his memorandum in support of motion, and in his testimony at his motion hearing. Therefore, we confine our analysis and decision to those materials only and do not determine the material relevance of other physical evidence recovered in connection with defendant's case, *i.e.*, the blood-smeared white shirt.

Here, the record reflects defendant's assertions of actual innocence would be significantly advanced by a favorable test result on physical evidence recovered from the female victim. As the female victim's hypnotically refreshed identification testimony was found to be admitted in error, the only witness identification testimony placing defendant at the scene of the crimes came from codefendant Glenda Sue. Despite defendant's attempts to prove Glenda Sue's bias, her testimony was significantly corroborated by the State's expert serolo-

gist, who testified seminal material recovered from the female victim and her clothing was consistent with the blood types of both defendant and Allen Medley.

Most important, semen recovered from the victim's rectal swab was found to be consistent with only defendant. As the female victim testified the white-gloved intruder was the only individual to anally rape her and the State's theory of the case presented defendant as the intruder in the white gloves, a test result in his favor as to the rectal swab would significantly advance his claim that someone other than him committed the crimes.

If, for example, defendant were seeking the testing of only the blood-smeared white shirt, this case would present a situation identical to *Savory*, where the evidence sought to be tested was minor in comparison to the State's case. However, unlike *Savory*, the physical evidence obtained from the female victim was not a collateral issue at defendant's trial but instead placed defendant at the scene of the home invasion and provided a direct link between him and the sexual assault on the female victim. Thus, although the evidence against defendant may be strong and compelling, his claim of actual innocence will nevertheless be significantly advanced by a favorable DNA test result. Therefore, for the reasons stated, we find the testing of physical evidence recovered from the female victim herein has the potential to produce evidence materially relevant to defendant's assertions of actual innocence.

## C. Additional Arguments by the State

■ In its brief to this court, the State additionally contends defendant's motion for forensic testing is deficient because defendant (1) failed to specify the type of DNA test to be performed, (2) alleged DNA testing was unavailable at the time of his trial but did not reference any case law or scientific article to support his statement, and (3) made only a bare allegation the requested testing employs a scientific method generally accepted within the relevant scientific community. Further, the State argues it never conceded these points.

As a general rule, arguments not raised with the trial court are forfeited on appeal. *People v. Lang*, 113 Ill. 2d 407, 469, 498 N.E.2d 1105, 1134 (1986). As the State, in this case, failed to raise these arguments either in its response to defendant's motion for forensic testing or at the hearing on defendant's motion, we deem them to have been forfeited for purposes of appeal and decline to consider them.

## III. CONCLUSION

We conclude the trial court erred in denying defendant's motion

for forensic testing. For the reasons stated, we reverse the court's judgment and remand.

Reversed and remanded.

COOK, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

I disagree that the trial court's order denying the motion for forensic testing was error.

I suggest that defendant does not meet the standards of sections 116—3(b)(1) and (b)(2). I also do not believe that the result of testing will be materially relevant to defendant's assertion of actual innocence.

This court in the direct appeal stated as follows:

"After about an hour, the trio left in the [victims'] automobile, dropped off some property, and went to the home of a friend, Carolyn Madison. Madison testified that she saw the Medleys and defendant in her home the following morning in possession of certain items of property which were taken from the [victims'] home.

The linchpin of the State's case was Glenda Sue Medley, who related the above events in substantial detail. She also was instrumental in leading the police to the defendant. Four days after the offense, she informed a Detective Murphy, of the Springfield police department, that she was present at the [victims'] home on the morning in question and had aided her cousin Allen and defendant steal the property." *Gibson*, 117 Ill. App. 3d at 273, 452 N.E.2d at 1371.

In sum, I would affirm the trial court's order.