NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190128-U

NO. 4-19-0128

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| SHERMAN GIBSON, | ) | No. 81CF243 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel and affirmed the circuit court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2    Defendant, Sherman Gibson, appeals from the circuit court's denial of his motion for leave to file a successive postconviction petition. On appeal, the Office of the State Appellate Defender (OSAD) moves to withdraw on the ground no issue of arguable merit can be raised. Defendant disagrees with OSAD's assessment of his appeal. We grant OSAD's motion and affirm the circuit court's judgment.

¶ 3                              I. BACKGROUND

¶ 4        In June 1981, intruders, armed with a gun, broke into a home in Springfield, Illinois. A husband and wife, their infant son, and their nine-year-old niece were present in the home. The intruders confined the husband in the bathroom, ransacked the home looking for property, and raped and sexually assaulted the wife. After approximately one hour, the intruders left, taking some of the couple's personal property.

¶ 5        At defendant's trial, both the husband and wife testified concerning the details of the break-in. Each described two of the intruders as being male, one wearing a green hooded sweatshirt and thick white gloves, and the other wearing lighter-colored pants. The wife testified she was sexually assaulted by each male intruder but only the white-gloved intruder assaulted her anally. The wife could not make an absolute positive identification of any of the intruders immediately following the break-in. After being hypnotized by detectives, the wife was able to identify the intruder in the white gloves as defendant.

¶ 6        The couple's niece also testified. She stated she was asleep on the couch in the living room, heard a noise, and woke up to find a black female standing over her. The woman told her to cover her head with a blanket and she did. She testified she was tied up by a man wearing gloves and then the intruders left.

¶ 7        The State presented the testimony of Glenda Sue Medley, who testified she, defendant, and her cousin Allen Medley were the individuals who broke into the couple's home. Her testimony was substantially similar to that of the couple and their niece. She specifically identified defendant as the intruder wearing gloves.

¶ 8        Carolyn Madison testified she saw the Medleys and defendant hours after the break-in with possession of property belonging to the couple.

¶ 9        The State's expert serologist, Debra Fesser, testified she tested blood samples taken from defendant, Allen Medley, and the wife and determined their blood types to be AB, O, and A, respectively. Fesser also tested physical evidence recovered from the wife's person and clothing and stated she found the presence of seminal material consistent with the blood types of both defendant and Allen Medley. Additionally, Fesser stated a rectal swab taken from the wife tested positive for the presence of semen consistent only with defendant's blood type. Further, a white shirt smeared with blood was recovered from the scene. The wife testified she believed the intruder with the white gloves had used it to wipe off a metal box and she assumed the blood on it was his. Fesser testified the bloodstains on the white shirt were consistent with defendant's blood type.

¶ 10        Based on the evidence presented, defendant was convicted of home invasion, rape, deviate sexual assault, burglary, and felony theft and received extended-term prison sentences of 45 years each for home invasion, rape, and deviate sexual assault, to be served concurrently with each other and concurrently with a 7-year prison term for burglary. Defendant appealed.

¶ 11        On direct appeal, this court found error in the admission of the wife's identification testimony obtained through hypnosis but affirmed, finding the error to be harmless. *People v. Gibson*, 117 Ill. App. 3d 270, 278, 452 N.E.2d 1368, 1374 (1983).

¶ 12        In December 1989, defendant filed a postconviction petition raising claims of ineffective assistance of counsel for failure to challenge the wife's hypnotically refreshed testimony and to present testimony of an alibi witness. The circuit court dismissed defendant's petition, and defendant appealed. On appeal, this court reversed and remanded with directions to hold an evidentiary hearing on defendant's claim of ineffective assistance of counsel. *People v.*

*Gibson*, 244 Ill. App. 3d 700, 704, 612 N.E.2d 1372, 1375 (1993). After a hearing on remand, the circuit court denied defendant's petition.

¶ 13 In September 2001, defendant filed a *pro se* motion for forensic testing of evidence obtained in connection with his trial pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2000)). In May 2003, the circuit court denied defendant's motion. In May 2005, this court reversed, holding physical evidence recovered from the wife had the potential to produce evidence materially relevant to defendant's assertions of actual innocence. *People v. Gibson*, 357 Ill. App. 3d 480, 489-90, 828 N.E.2d 881, 888-89 (2005).

¶ 14 Pursuant to this court's order, deoxyribonucleic acid (DNA) testing was done on the serological evidence available in this case. Blood standards were taken from defendant, Allen Medley, and the wife. Vaginal and rectal swabs taken from the wife following the offense were available for testing. On July 21, 2006, a report was prepared by the Illinois State Police Division of Forensic Sciences. The report indicated defendant was excluded from the DNA profiles found on the rectal swab. Allen Medley was not. The report also indicated both defendant and Allen Medley could not be excluded from the DNA profiles found on the vaginal swab.

¶ 15 In September 2006, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) based on newly discovered DNA evidence excluding him as the donor of semen on the rectal swab taken from the wife. In his petition, defendant alleged the judgment against him was void and should be vacated and set aside because the DNA evidence showed his actual innocence. Following a hearing where defendant was represented by counsel, the circuit court denied defendant's petition. In June 2012, this court affirmed, holding, in part, the results of the DNA testing did not show actual innocence

as they indicated defendant could not be excluded from the DNA profiles found on the vaginal swab taken from the wife. *People v. Gibson*, 2012 IL App (4th) 110131-U, ¶ 23. In so finding, we rejected defendant's argument concerning the unreliability of the DNA testing on the vaginal swab as it was being raised for the first time on appeal. *Id.* ¶¶ 24-25.

¶ 16        In August 2018, defendant filed a "Motion for a Post Conviction Hearing." In his motion, defendant alleged the State knowingly used perjured testimony to obtain one of his convictions. In support, defendant asserted (1) Fesser's testimony concerning the serology tests was "misleading" and (2) the wife's testimony that the intruder with the white gloves committed the deviate sexual assault was perjured given the DNA results showing his actual innocence of that offense. That same month, the circuit court characterized defendant's motion as a motion for leave to file a successive postconviction petition and then denied the motion.

¶ 17        In November 2018, defendant filed a "Motion to Supplement Post-Conviction Petition for Rapid DNA Testing with Additional Facts and Averments Pursuant to Supreme Court Rule 651(c), Ineffective Assistance of Counsel." In his motion, defendant alleged his counsel during the section 2-1401 proceeding was ineffective. Specifically, defendant complained his counsel failed to challenge Dana Pitchford, a forensic scientist, on the DNA testing on the vaginal swab. Defendant also complained his counsel failed to make an argument concerning the circuit court's responsibility to ensure any scientific testimony is reliable. Last, defendant complained his counsel allowed the State to mislead the defense about evidence the State intended to introduce concerning the theory of guilt.

¶ 18        In January 2019, the circuit court vacated its previous order denying defendant's motion for leave to file a successive postconviction petition, granted defendant's motion to

supplement his prior motion, and then considered all the filings together. After its review, the court again denied defendant's motion for leave to file a successive postconviction petition. Defendant filed a motion to reconsider, which the court denied.

¶ 19        This appeal followed.

¶ 20                            II. ANALYSIS

¶ 21        On appeal, OSAD asserts no colorable argument can be made suggesting the circuit court erred in denying defendant's motion for leave to file a successive postconviction petition. We agree.

¶ 22        The Post-Conviction Hearing Act (Act) "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010). The Act contemplates the filing of only a single postconviction petition, and any claim not raised in the original postconviction petition is deemed forfeited. *People v. Holman*, 2017 IL 120655, ¶ 25, 91 N.E.3d 849. To obtain leave to file a successive postconviction petition, a defendant must set forth a colorable claim of actual innocence or show cause and prejudice for the failure to raise an alleged claim in an earlier petition. *Id.* ¶ 26.

¶ 23        To support a claim of actual innocence, "the evidence in support of the claim must be 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *People v. Edwards*, 2012 IL 111711, ¶ 32, 969 N.E.2d 829. Under the cause-and-prejudice test, a defendant demonstrates cause by identifying "an objective factor that impeded his or her ability to raise a specific claim during his or her initial post[ ]conviction proceedings." 725 ILCS 5/122-1(f)(1) (West 2018). A defendant demonstrates

prejudice by showing the "claim not raised during his or her initial post[ ]conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f)(2) (West 2018).

¶ 24 Here, defendant asserted a claim of actual innocence based upon the DNA testing. In support, defendant, as he did in his section 2-1401 petition, cited the DNA results excluding him from contributing to the DNA found on the rectal swab taken from the wife. As this court addressed in our previous order affirming the dismissal of defendant's section 2-1401 petition, there were also DNA results indicating defendant could not be excluded as contributing to the DNA profiles found on the vaginal swab taken from the wife, meaning, even if the DNA results had been presented at trial, it would not have led to a different result.

¶ 25 Defendant also asserted a claim suggesting the State knowingly used perjured testimony from Fesser and the wife. Fesser testified the blood type of the blood found on the rectal swab matched defendant's blood type. While the DNA results excluded defendant from contributing to the DNA found on the rectal swab, the DNA results do not establish Fesser's testimony concerning the matching blood types was false. The wife testified she was anally assaulted by the white-gloved intruder, who was later identified as defendant. While the DNA results excluded defendant from contributing to the DNA found on the rectal swab, the DNA results do not establish the wife's testimony concerning her belief the white-gloved intruder anally assaulted her was false.

¶ 26 Last, defendant asserted a claim suggesting his counsel who represented him during the section 2-1401 proceedings was ineffective. Defendant complained about his counsel's failure to challenge Pitchford on the DNA testing of the vaginal swab. He failed, however, to explain how

such a challenge would have changed the result of the section 2-1401 proceedings. Defendant also complained about his counsel's failure to make an argument concerning the circuit court's responsibility to ensure any scientific testimony is reliable. He failed, however, to explain how such an argument would have changed the result of the section 2-1401 proceedings. Last, defendant complained about his counsel permitting the State to deliberately mislead the defense about evidence the State intended to introduce concerning the theory of guilt. He failed, however, to explain how the State deliberately misled the defense.

¶ 27　　　　After reviewing defendant's various claims, we agree with OSAD's assessment that no colorable argument can be made suggesting the circuit court erred in denying defendant's motion for leave to file a successive postconviction petition. In so finding, we note defendant, in response to OSAD's motion, asserts OSAD "was ineffective assistance of counsel when [it] let [him] put a case on [in this court]." We find no support for defendant's conclusory assertion and, therefore, reject it.

¶ 28　　　　　　　　　　　　　　III. CONCLUSION

¶ 29　　　　We grant OSAD's motion to withdraw as counsel and affirm the circuit court's judgment.

¶ 30　　　　Affirmed.